MARVIN, RESPONDENT, v. SLOAN, COUNTY ATTORNEY, ET AL.,
APPELLANTS.

(No. 5,958.)

(Submitted September 21, 1926.   Decided October 15, 1926.)

[250 Pac. 443.]

*Gaming—Slot Machines—When "Gambling Device."*

> 1.  A so-called mint vending machine which by the insertion of
> a nickel and pulling a lever will bring the operator a package
> of mint of the value of five cents, and which may or may not
> in addition bring to him trade checks good for five cents in trade
> (and which also may be operated by the insertion of a trade
> check, in which event trade checks but not mint may or may
> not be paid), is a gambling device; the machine appeals to the
> operator's propensities to gamble and lures him into continuing
> his play in the hope that he may gain an amount much greater
> than the amount risked.

[1]   Gaming, 27 C. J., sec. 101, p. 989, n. 66, 67.

*Appeal from District Court, Carbon County; O. F. Goddard,
Judge.*

SUIT for an injunction by F. J. Marvin against Emily E.
Sloan, as county attorney, and another.  Judgment for plain-
tiff, and defendants appeal.  Reversed and remanded, with
directions to dismiss the complaint.

*Mr. L. A. Foot,* Attorney General, and *Mr. A. H. Angstman,*
Assistant Attorney General, for Appellants, submitted a brief;
*Mr. I. W. Choate,* Assistant Attorney General, argued the cause
orally.

The identical machine has been condemned as a gambling
device by the following cases, and perhaps others: *People ex
rel. Verchereau* v. *Jenkins,* 153 App. Div. 512, 138 N. Y. Supp.
449; *State* v. *McTeer,* 129 Tenn. 535, 167 S. W. 121; *Ferguson*

1.  Slot vending machine as gambling device, see notes in 121 **Am.
St. Rep.** 703; 20 **Ann. Cas.** 133; 38 **A. L. R.** 703; 20 **L. R. A.** (n. s.)
242.  See, also, 12 **R. C. L.** 730.

v. *State,* 178 Ind. 568, Ann. Cas. 1915C, 172, 42 L. R. A. (n. s.) 720, 99 N. E. 806; *Commonwealth* v. *Gritten,* 180 Ky. 446, 202 S. W. 884; *Welch* v. *Commonwealth,* 179 Ky. 125, 200 S. W. 371; *State* v. *Googin,* 117 Me. 102, 102 Atl. 970; *State* v. *Johnson,* 15 Okl. Cr. 460, 177 Pac. 926; *State* v. *Ellis,* 200 Iowa, 1228, 206 N. W. 105; *Crippen* v. *Mint Sales Co.,* 139 Miss. 78, 103 South. 503; *Zatt* v. *Milton,* 96 N. J. Eq. 576, 126 Atl. 29; *Pure Mint Co.* v. *Labarre,* 96 N. J. Eq. 186, 125 Atl. 105; *Cagle* v. *State,* 18 Ala. App. 553, 93 South. 206; *Sheetz* v. *State,* 156 Ark. 255, 245 S. W. 815; *Griste* v. *Burch,* 112 S. C. 369, 99 S. E. 703; *Brockett* v. *State,* 33 Ga. App. 57, 125 S. E. 513; *Tonahill* v. *Molony,* 156 La. 753, 101 South. 130; *State* v. *Certain Gambling Instruments,* 46 R. I. 347, 128 Atl. 12; *State* v. *Krauss* (Ohio), 151 N. E. 183. The use of the machine is also prohibited as a lottery. (Const., sec. 2, Art. XIX; sec. 11149, Rev. Codes 1921; *Loiseau* v. *State,* 114 Ala. 34, 62 Am. St. Rep. 84, 22 South. 138; *In re Cullinan,* 114 App. Div. 654, 99 N. Y. Supp. 1097; *Myer* v. *State,* 112 Ga. 20, 81 Am. St. Rep. 17, 51 L. R. A. 496, 37 S. E. 96.)

*Mr. C. C. Rowan,* for Respondent, submitted a brief, and argued the cause orally.

We will concede that the cases are not in entire harmony, but believe we can point out to the court that the weight of authority and the better reasoning sustain respondent's contention that the machines in question are not gambling devices.

The first case cited by appellants, the New York case of *People ex rel. Verchereau* v. *Jenkins,* has been expressly disapproved and overruled by the same court in the case of *Byk* v. *Enright,* 203 N. Y. Supp. 296. The second case cited by appellants, the Tennessee case (*State* v. *McTeer*), has been expressly disapproved by the New York supreme court. We do not have the Tennessee statute before us, but if the decision holds that any slot machine similar to the one in question is a gambling device, the argument is not sound. The reason-

ing of the Oklahoma court in the Oklahoma case cited by appellants is not sound, and in fact, we respectfully submit with all due respect to the Oklahoma court that the decision is judicial legislation, and amounts only to a holding that the machine in question is an evil, and there is no argument whatever that the machine is a gambling device. For example, the Oklahoma court says: "There is always a chance that by several plays, checks may be obtained, *etc.*" We respectfully contend that the substance of this argument is that the player should not be permitted to play the machine for the reason that he may play it more than is advisable or for his best interests. And furthermore, we contend that since it is agreed in this case that each operation of the machine is a separate and complete transaction, the argument of the Oklahoma court could not possibly apply in the instant case. Respondent does not have the other reports of the cases cited by appellants, but from those which have been referred to, we respectfully contend that not a case has been cited which is direct authority for appellants' contention, under the agreed statement of facts.

We submit that the reasoning of the New York court in *Byk* v. *Enright, supra,* is sound, and that this court in the present case, which is the case of first instance in this state, should follow the New York rule. The supreme court of California has never passed on this machine, but the superior court of the county of Santa Clara, state of California, in the case of *People* v. *Morris,* September 5, 1916, held the identical machine was not a gambling device or lottery within the meaning of the California Code, which is similar to ours. We appreciate the fact that a superior court decision is no authority for this honorable court, but we do respectfully suggest that the people of the state of California, and the prosecuting attorney of Santa Clara county evidently did not feel that the supreme court of California would reverse the decision, or the case would have been appealed, and we cite this case only because there is no decision of the supreme court of California.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

The defendants, respectively the county attorney and sheriff of Carbon county, had threatened to confiscate certain machines operated by the plaintiff and to arrest him for their operation. In order to prevent such actions on the part of the defendants, the plaintiff brought this action seeking an injunction against them. After trial upon an agreed statement of facts the court entered judgment for plaintiff, granting an injunction. The defendants have appealed.

The record discloses that the machine in question is an [1] automatic vending device used for the sale of packages of a certain kind of mint. Each package is of the retail value of five cents. In its general outlines the machine resembles somewhat an ordinary cash register. At the top of the machine is a place for the insertion of a coin of the size of a nickel; at the right side is a lever, and in front is a container with a glass front for packages of mint, with a small drawer at the bottom from which the packages may be removed. In front is this inscription: "For 5¢ you receive a package of mints and —— trade checks." In the place indicated by the blank space is a glass covered opening in which appears either the word "no" or a numeral which may be any even number from two to twenty. The machine is operated by inserting a nickel and pulling the lever which causes a package of mint to fall into the drawer from which it may be removed. If, when the nickel is inserted, the word "no" appears at the window the purchaser receives nothing but the mint; if a numeral appears at the window there falls into the drawer in addition to the mint an equivalent number of trade checks; each check is good for purchase over the counter of a five-cent package of mint or other merchandise of the value of five cents. At the conclusion, and as a result of each operation, there appears at the window either the word "no" or a numeral showing the number of checks which the machine will deliver when it is

again operated. It may show the same result as the preceding operation, or a different result. The purchaser always receives a package of mint whenever he places a nickel in the machine and operates it; he may or may not receive trade checks in addition thereto; but he receives trade checks only when the window indicates the fact. In operating the machine the purchaser knows before placing his nickel therein exactly what he will receive therefor. The completion of the operation indicates what will fall to him who deposits the next nickel. The machine may show that the depositor of the next nickel will receive a package of mint and twenty trade checks. Each operation is separate and distinct so far as the mechanism of the machine is concerned. A trade check may be used to operate the machine, but will not produce mint; it will produce only the number of trade checks the window indicates before the one inserted is deposited.

The question is whether the machine is a gambling device or lottery. The lower court held that it is not. The attorney general contends that it is within the meaning of section 11159, Revised Codes of 1921, which provides in part that every person who runs or conducts or causes to be run or conducted, or keeps any slot-machine, punch-board or other similar machine or device or permits the same to be run or conducted for money, checks, credits or any representative of value, or for any property or thing whatsoever, is guilty of a misdemeanor and shall be punishable by a fine of not less than one hundred nor more than one thousand dollars and may be imprisoned for not less than three months nor more than one year, or by both such fine and imprisonment. And section 11160 provides in part that any person who has in his possession or under his control, or who permits to be placed, maintained or kept in any room, space, inclosure or building, owned, leased or occupied by him or under his management or control, any slot-machine, or any machine or apparatus of the kind mentioned in the preceding section is punishable by a fine of not less than

one hundred nor more than one thousand dollars, and may be imprisoned for not less than three months nor more than one year in the discretion of the court.

The precise question has been before a number of appellate courts, always, so far as we are apprised, with the same result. In *State* v. *McTeer*, 129 Tenn. 535, 167 S. W. 121, the court said: "The question raised is whether the slot machine described is a gambling device. We are of the opinion that it is. It is insisted by the defendant that this is not a sound conclusion, because the indicator always shows what the player is to get before he deposits his nickel; hence it is said there is no element of uncertainty, and no opportunity of obtaining disproportionate gains, or sustaining loss, by the hazard of anything of value. It is true there is no hazard of loss, if we assume, as we think we should, that each package of gum is the fair commercial equivalent of five cents; but there is the prospect of obtaining very greatly disproportionate gains. * * * The lure is the opportunity of winning 10 to 100 cents by the deposit and expenditure of 5 cents. * * * The player is induced to continue by the fact that he is getting 5 cents' worth of gum for each play, with always the chance just ahead that the next presentation of the indicator will give him the opportunity of making a profit of from 100 to many times that per cent."

The supreme court of Indiana, in *Ferguson* v. *State*, 178 Ind. 568, Ann. Cas. 1915C, 172, 42 L. R. A. (n. s.) 720, 99 N. E. 806, said: "In the present case, the fact that the machine would indicate the reward before it was played makes no difference. The inducement for each play was the chance that by that play the machine would be set to indicate that it would pay checks on the following play. The thing that attracted the player was the chance that ultimately he would receive something for nothing. The machine appealed to the player's propensity to gamble, and that is the vice at which section 2474 is directed. The inventor of the machine has endeavored 'to ad-

here to the letter of the law while violating its spirit,' and, as always must be the result, has failed.''

The supreme judicial court of Maine, in *State* v. *Googin,* 117 Me. 102, 102 Atl. 970, reasoned thus: ''But respondent says the gum machine involves no element of chance; that each play of the machine is a completed transaction, and shows precisely what the player is to receive, and what the machine is to give; that there is no contract, express or implied, that the player shall have a second or third play to avail himself of the opportunity of obtaining the trade-checks; that, this being so, there is no element of chance. But the fallacy of this contention is found in the assumption that the machine deals with the individual, whereas by its method of operation, of necessity, it deals with the public. * * * If the player does not win the first time, he knows he can repeat until he does win. It is therefore quite apparent that it is the prize, and not the gum, that invites the public. Accordingly, while each play is a completed act, it may be only preliminary to the future play, by the same person, which will bring forth the coveted prize, the chance in the operation being, not in the visible play which may show only a package of gum, but in the invisible play by which the machine may turn up a visible prize to be captured on the next play. If a play turns up no premium, neither party loses. If it does turn up a premium, then the machine loses on that particular play.''

Respecting the operation of a similar machine the court of appeals of Missouri held ''as unsound the view of defendant that each play constituted a separate and distinct transaction in the sense of ending the relation of the player to the machine, which was designed and intended to include a number of plays. The contrivance was intended to allure the player into continuing to play in the hope that the next time the finger would point to trade-checks and thus bring him something for nothing.'' (*City of Moberly* v. *Deskin,* 169 Mo. App. 672, 155 S. W. 842.) The foregoing excerpts cover the case completely.

To the same effect are *Commonwealth* v. *Gritten,* 180 Ky. 446, 202 S. W. 884; *State* v. *Johnson,* 15 Okl. Cr. 460, 177 Pac. 926; *State* v. *Ellis,* 200 Iowa, 1228, 206 N. W. 105; *Zaft* v. *Milton,* 96 N. J. Eq. 576, 126 Atl. 29; *Cagle* v. *State,* 18 Ala. App. 553, 93 South. 206; *Sheetz* v. *State,* 156 Ark. 255, 245 S. W. 815; *Brockett* v. *State,* 33 Ga. App. 57, 125 S. E. 513; *Tonahill* v. *Molony,* 156 La. 753, 101 South. 130; *People ex rel. Verchereau* v. *Jenkins, Chief of Police,* 153 App. Div. 512, 138 N. Y. Supp. 449.

The only case to the contrary which we have found is *Byk* v. *Enright,* 203 N. Y. Supp. 296, a decision by Mr. Justice Benedict at a special term of the supreme court of New York for New York county, in which the justice criticised *People ex rel. Verchereau* v. *Jenkins, supra,* and refused to follow it. *Byk* v. *Enright* was decided February 13, 1924; on March 27, 1924, the second department of the appellate division of the supreme court, in the case of *Greene* v. *Enright,* 208 App. Div. 819, 203 N. Y. Supp. 932, followed *People ex rel. Verchereau* v. *Jenkins, supra,* and the same court on May 2, 1924, reversed *Byk* v. *Enright,* 208 App. Div. 850, 204 N. Y. Supp. 897, upon the authority of *Greene* v. *Enright, supra. Byk* v. *Enright* was then carried to the court of appeals, which on July 15, 1925, affirmed the decision of the second department of the appellate division of the supreme court. (*Byk* v. *Enright,* 240 N. Y. 669, 148 N. E. 764.)

Undoubtedly the machine in question is a gambling device within the contemplation of section 11159, *supra.*

The judgment is reversed and the cause is remanded to the district court with directions to dismiss the complaint.

*Reversed.*

ASSOCIATE JUSTICES STARK and MATTHEWS and HONORABLE THEODORE LENTZ, District Judge, sitting in place of MR. JUSTICE HOLLOWAY, disqualified, concur.

MR. JUSTICE GALEN not sitting.