

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

April 22, 1971

Honorable Ward Casey
County Attorney
Ellis County
Waxahachie, Texas

Dear Mr. Casey:

Opinion No. M-839

Re: Whether a certain coin
operated machine would
fall within the prohibition
of Articles 619, 642a, and
654, Texas Penal Code.

Your recent letter requests our opinion as to whether a certain coin operated machine would fall within the prohibition of Articles 619, 642a, and 654, Texas Penal Code.

You describe the machine as follows:

"A coin operated machine which includes a reel or drum on which a roll of tickets is dispensed one at a time after insertion of a quarter, and contains a window by which the customer can see the value of the ticket he is purchasing. After purchasing the ticket the roll advances and the customer can then see the value of the next ticket. The lowest value of any ticket purchased is a $.50 discount on any $10.00 purchase in the premises where the machine is located. The only ticket the customer can see at one time is the one which will be dispensed when he inserts his quarter. However, on inserting the quarter, the roll will also advance and allow him to see the value of the next ticket. He can then elect to purchase the next ticket or not. The values of the tickets give discounts ranging from $1.00 to $31.00. The owner of the machine and the operator of the premises where it is located split the proceeds after a complete roll of tickets has been dispensed, with the operator of the premises paying off all winning tickets in the form of discounts on his merchandise or services.

"The roll of tickets may be installed in such

-4065-

> a manner that the customer does not know either the value of the ticket he will receive or the value of the second ticket."    (Emphasis added).

Article 619, generally defining gaming devices prohibited, reads as follows:

> "If any person shall directly, or as agent or employee for another, or through any agent or agents, keep or exhibit for the purpose of gaming, any policy game, any gaming table, bank, wheel or device of any name or description whatever, or any table, bank, wheel or device for the purpose of gaming which has no name, or any slot machine, any pigeon hole table, any jennylind table, or table of any kind whatsoever, regardless of the name or whether named or not, he shall be confined in the penitentiary not less than two nor more than four years regardless of whether any of the above mentioned games, tables, banks, wheels, devices or slot machines are licensed by law or not.  Any such table, bank, wheel, machine or device shall be considered as used for gaming, if money or anything of value is bet thereon."

"Slot machines", as gaming devices under Article 619, are further defined and prohibited under Article 642a which provides, in its relevant part, the following:

> "Section 1.   The term 'slot machine', as used in this Act, means:
>
> ". . .
>
> "(b)   Any machine or mechanical device designed and manufactured or adapted to operate by means of the insertion of a coin, token, or other object and designed, manufactured or adapted so that when operated it may deliver, as the result of an application of an element of chance, any money or property; or
>
> ". . ."

Article 654 prohibiting a lottery reads as follows:

"If any person shall establish a lottery or dispose
of any estate, real or personal, by lottery, he
shall be fined not less than one hundred nor more than
one thousand dollars; or if any person shall sell, offer
for sale or keep for sale any ticket or part ticket in
any lottery, he shall be fined not less than ten nor
more than fifty dollars."

Under the facts presented by you it is apparent that
the coin operated machine in question is designed, manufactured,
and operated so that there is an element of chance in the de-
livery of the trade discount tickets.  When the customer pays
his quarter on the first ticket, he is purchasing more than
what he sees, that is, the election to purchase the next ticket,
the value of which he does not know but which may range from
$1.00 to $31.00 in trade discounts.  Of course if the roll of
the tickets were installed in such a manner that the customer
does not know the value of the ticket he will receive, then
an additional element of chance exists.

We believe that the case of Queen v. State, 246 S.W. 384
(Tex.Crim., 1922), is in point on the question presented wherein
the court held that a chewing gum vending machine, by the
operation of which, on depositing a nickel in the slot, the
depositor receives a package of gum, whereupon the machine
indicates that on the next play he will receive nothing or an
indicated number of trade checks, which may be exchanged for
merchandise, or played in the machine on the chance of receiving
a greater number of checks, is a lottery.  Also, the court in
Queen quoted with approval from a New York decision, People
ex rel v. Jenkins, 153 App. Div. 512, 138 N.Y. Supp. 449
(p. 450), which held that:

"'The element of chance lies in the fact that upon
the turning of the lever and the deposit of the
gum and number of checks indicated there is
further indication of how many trade checks, if
any, may be obtained upon the dropping of the second
nickel.  The number of trade checks, however,
which can be obtained upon the dropping of the
second nickel is only indicated after the first nickel
has been dropped and the lever turned.  Thus, in
addition to the gum and trade checks indicated as

the certain receipts upon the dropping of the nickel,
is given an option to obtain a package of gum and
an uncertain number of trade checks upon the
dropping of the second nickel.  That this uncertain
option has in it such an element of chance as
constitutes gambling can hardly be questioned.  In
fact, this element of chance only gives to the
machine its value; and that its use is within the
direct prohibition of the statute seems clear.'"
(at p. 385).

Accord, Stranger v. State, 298 S.W. 906 (Tex.Crim., 1927) and
Boatright v. State, 38 S.W.2d 87 (Tex.Crim. 1931); also 135
A.L.R. 104, 141 et seq.

In Lytle v. State, 100 S.W. 1160 (Tex.Crim., 1907), the
court held that a trading machine requiring the insertion of a
nickel, which always paid at least a nickel back in trade, but
with the chance of a player getting more, was a gaming device
and the player was guilty of betting at a gaming table and
bank.

Although penal statutes are to be construed strictly
they should not be construed so strictly as to defeat the
plain legislative intent.  Head v. Hunter, 141 F.2d 449.
As was so aptly stated in Moberly v. Deskin, 169 Mo.App.
672, 155 S.W. 842 at 844 (1913):

"In no field of reprehensible endeavor has the
ingenuity of man been more exerted than in the
invention of devices to comply with the letter but
to do violence to the spirit and thwart the bene-
ficent objects and purposes of the laws designed
to suppress the vice of gambling.  Be it said
to the credit of the expounders of the law that
such fruits of inventive genius have been allowed
by the courts to accomplish no greater result than
that of demonstrating the inaccuracy and insuffi-
ciency of some of the old definitions of gambling
that were made before the advent of the era of
greatly expanded, diversified, and cunning mechanical
inventions.  The chief element of gambling is the
chance or uncertainty of the hazard.  It is not
essential that one of the parties to the wager
stands to lose."

Our opinion is that the coin operated machine which you describe is a gaming device and a lottery within the prohibition of Article 619, 642a, Section 1b, and 654.

## S U M M A R Y

The coin operated machine designed and manufactured or operated so that with each play for the sum of $.25 the machine delivers, in addition to the trade discount ticket of a value which is known to the player, the additional option to purchase another trade discount ticket which may range in value from $1.00 to $31.00 in trade discounts, is a gaming device and lottery within the prohibition of Article 619, 654, and 642a, Texas Penal Code.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

By: NOLA WHITE
First Assistant

Prepared by Guy C. Fisher
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

Wardlow Lane
James McCoy
Jay Floyd
Rex White

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant